**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Monica Valenzuela, | No. CV-22-1267-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security, | |
| Defendant. | |

On October 4, 2019, Claimant Monica Valenzuela filed a Title II application for a period of disability and disability insurance benefits. She also filed a Title XVI application for supplemental security income on October 25, 2019. In both applications, Claimant alleged disability beginning February 1, 2019. (AR. 16.) The agency denied her claim initially and again on reconsideration. (AR. 16) After an administrative hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision on July 28, 2021, finding Claimant not disabled. (AR. 30.) The Appeals Council denied review of the decision, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration. (AR. 1.) Claimant seeks judicial review of the Commissioner's decision under 42 U.S.C. § 405(g).

**I.      Standard**

An ALJ's factual findings are "conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quotation and citation omitted). Substantial evidence is "more than a mere scintilla" and "means—and means only—such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quotations and citations omitted). "When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). The substantial evidence standard is a "highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 690 (9th Cir. 2009). In its review of an ALJ's decision, the Court reviews only those issued raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

To determine whether a claimant is disabled, the ALJ engages in a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At the second step, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically determined to be disabled. If not, the ALJ moves to the fourth step, where she assesses the claimant's residual functioning capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is not so capable, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**II.   Analysis**

In resolving Claimant's applications, the ALJ made the following findings: (1) Claimant has not engaged in gainful activity since July 26, 2019; (2) Claimant's severe medically determinable impairments include obesity, hypertension, chronic kidney

disease, a hiatal hernia, gastroesophageal reflux disease, thoracic spondylosis, abdominal lymphadenopathy, a depressive disorder, and an anxiety disorder; (3) her impairments do not meet or medically equal the severity of one of the presumptively disabling impairments listed in agency regulations; and (4) Claimant has the RFC to perform light work, except she can stand and/or walk and sit six to eight hours during an eight hour day, frequently balance, stoop, kneel, and crouch, frequently handle with her left arm, occasionally climb and crawl, occasionally reach with her left arm, should not work around heights or moving machinery, and can perform simple routine work involving simple work-related decisions and simple instructions with few changes in the work setting. (AR. 19-22.) Based on this RFC, the ALJ found Claimant could perform her past relevant work as a garment sorter, scrap sorter, and janitor. (AR. 28.) The ALJ therefore found Claimant not disabled at step four of the process.

Claimant raises two issues for review: (1) whether, in crafting Claimant's RFC, the ALJ properly considered and explained her rejection of certain restrictions assessed by Dr. Jose Abreu and (2) whether the ALJ provided sufficient reasons for rejecting Claimant's allegations that her irritable bowel syndrome ("IBS") produces disabling restrictions. (Doc. 13 at 1.)

**A. Dr. Abreu's Assessment**

For claims filed on or after March 27, 2017, ALJs give no specific evidentiary weight, including controlling weight, to any medical opinion. 20 C.F.R. § 416.920c(a). Instead, the regulations require that the ALJ consider all medical opinions and articulate how persuasive she finds them. *Id.* at § 416.920c(b).

The ALJ considers several factors in assessing the persuasiveness of a medical opinion, but she need only articulate her findings regarding the supportability and consistency of the opinion with other evidence in the record. *Id.* § 416.920c(b)(2). Supportability refers to the supporting explanations and objective medical evidence offered by the source to justify their medical opinion. *Id.* § 413.920c(c)(1). Consistency refers to

the uniformity and agreement amongst the evidence from other medical and nonmedical sources. *Id.* § 416.920c(c)(2).

The ALJ found Dr. Abreu's examination conclusion "partially consistent with the record and therefore, partially persuasive." (AR. 27.) She explained that the part of the opinion she found unpersuasive was not consistent with or supported by the medical evidence. (AR. 21, 27.) The ALJ adequately explained and supported her finding.

Dr. Abreu opined Claimant "was able to carry out simple instructions" and "noted no problems with attention or concentration." (AR. 426.) Dr. Abreu reported Claimant's memory function was fine and fund of knowledge and expression consistent with average intelligence. (AR. 426.) According to Dr. Abreu, "[t]his suggests she is able to follow detailed instructions and work-life procedures." (AR. 426.) Claimant has no history of special education or learning difficulties. (AR. 422.) Dr. Abreu performed a "Mini Mental Status Exam," which Claimant passed with a score of twenty-nine out of thirty. (AR. 423.) When Dr. Abreu asked Claimant about the barriers she faces to gain employment, she replied: "My IBS and my migraines." (AR. 422.) She did not mention any mental health barriers. This part of the report is consistent with the ALJ's RFC determination, indicting it is the portion the ALJ found persuasive. (AR. 22, 27.)

However, Dr. Abreu also reported that Claimant "has at least three symptoms of depression, depressed mood, anhedonia, and feelings of worthlessness/guilt, the latter causing chronic social isolation." (AR. 425.) He opined that "a sense of worthlessness manifested in blunted affect in tandem with anxiety may cause difficulty maintaining regular work attendance as well as socially appropriate behavior in work situations." (AR. 425.) The ALJ thought this statement was "based on pure speculation and not concrete evidence," and further was inconsistent with Claimant's reported activity level. (AR. 22, 27.) There is no evidence in the record that supports Claimant having difficulty maintaining regular work attendance or socially appropriate behavior in work situations due to feelings of worthlessness. (AR. 21.) To the contrary, Claimant said about her most recent employment, "I liked my job." (AR. 54.) Claimant further testified, "And I really had good

numbers. And it was something that I enjoyed doing, and in the atmosphere with the people." (AR. 54.) Claimant lost her previous job because of her frequent bathroom breaks. (AR. 54.) The ALJ reasonably concluded that the portion of Dr. Abreu's opinion predicting that Claimant might have difficulty maintaining regular work attendance and socially appropriate behavior in work situations was speculative and not consistent with the overall evidentiary record.

### B. Claimant's Symptom Testimony

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ must determine whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quotation and citation omitted). If the claimant has presented such evidence, the ALJ may only reject the claimant's testimony regarding the severity of his symptoms "by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (quotation and citation omitted).

The ALJ may engage in ordinary techniques of credibility evaluation, including considering the claimant's reputation for truthfulness or looking to inconsistencies in the claimant's testimony, but she may not reject a claimant's testimony solely for "lack of medical evidence." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). This Court will uphold the ALJ's decision so long as she has provided legally sufficient reasons for rejecting the claimant's testimony, even if the ALJ did not "clearly link [her] determination to those reasons." *Lewis*, 236 F.3d at 512. "Even when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned." *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004) (quotations and citation omitted).

Claimant testified that her impairments manifest in swelling due to diarrhea, which caused pain with walking. Claimant said she was in the bathroom eight to ten times a day,

taking ten to fifteen minutes each time and sometimes even taking thirty minutes. (AR. 54-55.) The ALJ concluded Claimant presented objective medical evidence of severe impairments, which reasonably could be expected to produce the alleged symptoms. (AR. 19.) But the ALJ determined Claimant's statements concerning the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (AR. 24.)

Inconsistency with the overall evidentiary record (as opposed to lack of corroboration) is a clear and convincing reason for discounting a claimant's symptom testimony, and substantial evidence supports the ALJ's finding on this point. For example, the objective medical evidence showed that a July 2020 CT scan of Claimant's "abdomen and pelvis showed no evidence of bowel obstruction, resolved colon mural thickening and inflammation, diverticulosis without evidence of diverticulitis, and a small hiatal hernia." (AR. 463) Though Claimant alleges she suffers from chronic and debilitating impairments, the record reveals that Claimant was treated conservatively for these impairments. (AR. 454, 465.) She was advised several times to eat a high fiber diet to help with her IBS symptoms. (AR. 465.) A treatment plan consisting of dietary changes is not consistent with the severity of symptoms Claimant alleged. What's more, it is not clear from the record if Claimant ever followed the advice to eat a high fiber diet, meaning it also is unclear if the Claimant's symptoms would have improved had she followed the advice of her doctors. Claimant reported to be complying with labs, stool studies, and a gastric emptying scan ("GES") that was ordered for her in December 2019, but she did not fulfill them and did not follow up on them. (AR. 469.) When Claimant finally did a GES, the results were normal, and she again was advised to eat a high fiber diet and given educational material on the subject. (AR. 465.) Additionally, Claimant did not take prescribed medications. (AR. 502.) The ALJ reasonably concluded that non-compliance with medical advice and treatment recommendations is inconsistent with the chronic and debilitating symptoms Claimant described. The ALJ did not err.

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED.** The Clerk is directed to enter judgment accordingly and terminate this case.

Dated this 5th day of July, 2023.

Douglas L. Rayes
United States District Judge